NEW YORK,
May, 1835.

Ellsworth
v.
Thompson.

### Ellsworth vs. Thompson.

When a *writ of inquiry* is directed to be executed *at the circuit*, the *circuit judge* and not the *sheriff*, takes the direction of its execution, and the proceedings are in all respects similar to the taking of an ordinary inquest.

The doctrine that the *circuit judge*, in the execution, of such writ, acts merely as the *assistant of the sheriff*, and can exercise no judicial power, is repudiated.

In such writ the sheriff must be commanded to summon the jury, and the judge directed to take and certify the inquisition.

On the execution of a writ of inquiry in an action of *assault and battery*, matter of *provocation*, happening so long before the assault that there has been time for reflection and for the passions to cool, cannot be taken into consideration by the jury, in the assessment of damages; it is otherwise where the provocation and assault are simultaneous.

Writ of inquiry executed at the circuit. This was an action for an *assault* and *battery*. The defendant having suffered a default, the plaintiff obtained a rule to have a writ of inquiry executed at the circuit in the county where the venue was laid. He accordingly appeared at the circuit, and prayed that the writ might be executed, and proposed that the names of twelve jurors to take the inquisition should be drawn from the box containing the names of the jurors summoned to attend the circuit. To this the counsel for the defendant objected, insisting that the *sheriff* should summon such jurors as he thought proper, and proceed and take the inqusition ; and the counsel further contended that, upon the execution of such a writ at the circuit, the *circuit judge* acted merely as an *assistant to the sheriff*, and could not exercise any judicial power whatever. The circuit judge (the Hon. Esek Cowen) told the counsel that he understood the rule of this court, ordering the writ of inquiry to be executed at the circuit, as directing the machinery of the circuit court to be employed in its execution, and that he would therefore take the same direction of the cause, in the empannelling of the jury and in the other proceedings to be had, that he would in the taking of an ordinary inquest at the circuit ; and the clerk, by his order, proceeded to draw the jury. The third juror drawn was challenged by the plaintiff as not indifferent. The two

jurors first drawn were sworn as triors, and after hearing testimony and receiving the charge of the judge, they pronounced the challenge well taken, and the juror was excluded, The jury being completed, the plaintiff produced his testimony; and after the judge had instructed the jury as to the law of the case, as laid down by this court in *Lee* v. *Woolsey*, 19 *Johns. R.* 319, on the subject of *provocation* in cases of assault and battery, he directed the sheriff to take charge of the jury, who did so accordingly. The jury found an inquisition, with $1000 damages. The defendant moved to set aside the inquisition, on the ground that the writ of inquiry, in the manner in which it had been executed as above stated, had been *irregularly* executed; and should the court adjudge otherwise, he then asked for a stay of proceedings, to enable him to apply to set aside the inquisition *on the merits,* for misdirection in the charge of the judge. The grounds of which branch of the motion sufficiently appear in the opinion of the Chief Justice. ·

*S. Stevens,* for the motion.

*A. L. Jordan,* contra.

*By the Court,* SAVAGE, Ch. J. The first question arises upon the *regularity* of the proceedings. It is certainly singular that the practice in cases like the present has never been settled. Instances have been numerous in which writs of inquiry have been executed at the circuits, and the course pursued in this case is that which has been usual on such occasions, as was remarked by the circuit judge.

There seems to be no rule of court or adjudication upon the subject. The oldest *dictum* to be found is in 12 *Mod.* 620. It is anonymous, and is as follows : " Holt, Chief Justice. A judge of nisi prius, upon trial of a writ of inquiry, is only an assistant to the sheriff, and has no judicial power; and if the parties come to any agreement there, the way to make it effectual is, to bring it to him to sign, and afterwards move above to have it made a rule of court." That a *judge,* while

NEW YORK,
May, 1835.

Ellsworth
v.
Thompson

NEW YORK,
May, 1835.

Ellsworth
v.
Thompson

sitting in his judicial capacity, should be only an *assistant* to a *sheriff* on the execution of a writ of inquiry, which the books all say is a ministerial act by the sheriff, must strike the mind of every lawyer as a legal absurdity. Rather than admit such a proposition, it would be more reasonable to suppose there must be some mistake in the report of the case—particularly where the only authority for such a proposition is found in an anonymous case, published by an anonymous reporter—in a book of no authority and of very small repute. I have copied the whole case. There is the same reason for considering one part of it as authoritative as the other; but every practitioner knows there is no such practice, as is there stated, to enforce an agreement or settlement between the parties. It seems probable that if any thing was said by *Holt*, he must have alluded to the aid which a judge might think proper to give the sheriff unofficially. Mr. *Sellon*, in introducing the case, remarks : " Sometimes the writ is executed before a judge ; in which case he is only an assistant to the sheriff, and has no judicial power," &c.—not necessarily implying that the writ must be executed *in court* at *nisi prius*, where the judge certainly has judicial power. Mr. *Archbald* says that a writ of inquiry is usually executed before the sheriff or his deputy ; it may however, under special circumstances, be executed before the chief justice, or before a judge of assize. 2 *Archb. Pr.* 23. He refers to 12 *Mod. R.* 610, but says nothing about the subordinate character in which the judge is there stated to act. He adds, that it is only where some difficult point of law is likely to arise in the course of the inquiry, or where the facts are important, that the court will grant this indulgence ; and a notice of such execution is given for the sittings or assizes generally in the same manner as a notice of trial is given. The *execution* here referred to seems to be the act of the judge. 2 *Archbald*, 25 *Tidd*, 512. 1 *Sellon*, 353.

If it be strictly correct that the execution of a writ of inquiry is merely a ministerial act, as has often been decided, 2 *Johns. R.* 70, *and cases there cited*, it seems strange that a judge should be called upon to assist the sheriff in the performance of his ministerial duties ; besides, the reason given why a

judge is to assist is opposed to this view of the subject. Cases are sent to the sittings or assizes when some difficult question of law is likely to arise. The decision of a difficult question of law is surely not a ministerial act ; nor is it an occasion in which it would be fit and proper for a judge to act subordinate to the sheriff. The rule is broadly laid down, that in executing a writ of inquiry the sheriff acts ministerially ; and generally that is correct. Where no objection is made before him to the proceedings, his acts are all ministerial ; but if an objection is made for a juror, the sheriff may, for cause satisfactory to him, set him aside and summon another ; and if he refuse to do so, it would be a good ground for an application to set aside the inquisition. The act of deciding whether a juror is indifferent between the parties is not a ministerial, but a judicial act. So, too, the admission or rejection of evidence is a judicial act. There is one class of cases in which provision is made by statute for the execution of a writ of inquiry *at the circuit*, viz. actions on bonds conditioned for the performance of covenants. In such cases, with some exceptions, damages are to be assessed by the circuit judge and a jury, in the same manner in which an inquest is taken. In such cases the writ commands the sheriff to summon the jury to appear at the circuit, and the judge to certify the inquisition before him taken, to the court at the next term. 2 *Lill. Ent.* 609. *Tidd's. App.* 143, 4. 1 *R. L.* 518, § 7. The revised statutes provide that in such cases a writ of inquiry may be executed and returned as other writs of inquiry, or a circuit roll may be made up and the circuit judge shall proceed in the same manner as in other causes sent to that court to be tried, and shall in like manner return the verdict of the jury thereupon. This proceeding is strictly applicable to actions on bonds with condition for the performance of covenants other than the payment of money. It is however an appropriate mode, in the opinion of the legislature, of assessing damages, in cases where there is no certain mode by calculation of ascertaining the damages which the plaintiff should recover. In actions sounding in damages, or where the demand is unliquidated, it is said the court may assess the damages themselves, and that the inquisition before the sheriff is

merely to inform the conscience of the court; but whatever theories we may indulge, the assessment of damages by a jury, when it cannot be done by calculation, is a proceeding which the court have no right to depart from. I apprehend, however, that the court have the same power to direct the circuit judge to assess the damages which they have to direct the sheriff; and I apprehend, also, that when this court directed the writ of inquiry to be executed at the circuit, it was not the intention of the court, if they had the power, to authorize the sheriff to hold the circuit court—a power which, by the constitution and laws, appertains only to the judges of this court and the circuit judges. The circuit judge was right in supposing that this court, by ordering the writ of inquiry to to be executed at the circuit court, intended to employ the machinery of the circuit in the assessment of the damages. They took the execution of the writ from the sheriff, for reasons not now necessary to be explained, and they gave or intended to give to the circuit judge the control of the proceedings. They intended, for instance, that the jury should be drawn from the circuit jurors, as being probably more indifferent and better qualified than a jury would be, summond by the sheriff for the express purpose of assessing the damages in this suit; they intended to constitute the judge, and not the sheriff, the presiding officer—as being better qualified to decide any question of law which might arise, and to advise the jury upon any matter in which advice might be proper. All this must have been intended by this court or there was no fitness or propriety in directing the writ of inquiry to be executed at the circuit. I have not the writ now before me, but I think, in such a case, it should direct the sheriff to return the jury at the circuit court, and the circuit judge to take the inquisition. If the writ in this case is not in that form, it should be amended in that particular. The proceedings should be in all respects similar to the assessment of damages upon an inquest, so far as respects the empannelling the jury. and the assessment of the damages. I am therefore of opinion that there was no irregularity in the form of conducting the execution of the writ of inquiry.

Whether the judge erred, in his charge to the jury, is a question arising upon the second branch of the motion: which is for an order to stay proceedings, to give the defendant an opportunity to move to set aside the inquisition upon the merits. To justify such an order, there should be good grounds to doubt the correctness of the charge of the judge. The assault and battery prove, was evidently the effect of deliberation; the opportunity was sought by the defendant, and he had previously prepared himself with a writing for the plaintiff to sign, and with a whip, wherewith to make an assault, determined to disgrace the plaintiff, in one way or the other. When the plaintiff refused to sign the paper, then, and not till then, did the defendant exhibit the whip, which had been concealed about his person. It is evident therefore, that before the defendant met the plaintiff, he had deliberately resolved, that unless the plaintiff signed the paper, he would chastise him. This was not, therefore, a case of a sudden gust of passion, produced by some simultaneous provocation, on the part of the plaintiff. It is true, that in some cases, the law has regard for the passions and frailties of our nature. For instance, had the plaintiff, in the interview between the parties, given utterance to some abuse, whether slanderous or not; had he charged the defendant, or his father, with criminal or even dishonorable conduct, and and had the defendant, upon such provocation assaulted the plaintiff, although the act could not have been justified, yet the provocation being given at the time, would have been some palliation of the offence; and the jury would have been warranted in giving small, perhaps nominal damages. But where provocation has been given, and time has been afforded for the passions to cool—time had for reflection—such provocation is no justification or palliation for a subsequent assault and battery. Such is the law of this state, as appears from the case of *Lee* v. *Woolsey*, adverted to by the judge ; and it is believed such is the law of every well regulated society. A contrary doctrine would lead to the prostration of all law and order. If men like the defendant—of liberal education ; of deservedly high standing in society ; of honorable and respectable connections ; of more than ordinary property—if

men thus elevated in society may take the law into their own hands, and proceed with deliberation to violate it, and abuse a fellow citizen ; what evils may not be apprehended, from the force of such examples upon the ignorant and the vicious; If they see such a precedent set, and observe the offender to escape with impunity, is it not natural to suppose that they will proceed to the utmost extremity, and perpetrat the greatest outrages against the peace and good order of society ? In my opinion, the judge stated the law to the jury correctly ; and that there is no ground for the order to stay proceedings.

The motion must be denied ; but as the practice has not been settled, it is not a case for costs.

Motion to set aside proceedings and for stay of proceedings denied, but without costs ; and an amendment of the writ of inquiry is ordered, so as to direct the sheriff to return the jury at the circuit, and the judge to take and certify the inquisition.